# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LIMITED STORES COMPANY, LLC, *et al.*,[1] | ) | Case No. 17-10124 (KJC) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Related to Docket No. 13** |

**ORDER (A) APPROVING THE ASSET PURCHASE AGREEMENT BETWEEN THE DEBTORS AND THE PURCHASER, (B) AUTHORIZING THE SALE OF CERTAIN OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (C) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS, AND (D) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"):  (a) approving the Agreement (defined below) attached to this Order as **Exhibit 1** (as may be amended in accordance with the outcome of the Auction, the "Agreement"); (b) authorizing and approving the Sale of the Assets free and clear of liens, claims, encumbrances, and other interests to the extent set forth in the Agreement; (c) authorizing the assumption and assignment of the Executory Contracts; and (d) granting related relief; and this Court, in furtherance of the Motion, having entered an order on January 18, 2017 at [Docket No. 66] (the "Sale Notice Order") approving, among other things, the proposed form of notice for the Sale Hearing; and this Court, in furtherance of the Motion, having entered an order on January 30, 2017 at [Docket No. 157] (the "Bid Protections Order") approving, among other things, the proposed Bid Protections; and

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Limited Stores Company, LLC (6463); Limited Stores, LLC (0165); and The Limited Stores GC, LLC (6094).  The location of the Debtors' service address is:  7775 Walton Parkway, Suite 400, New Albany, Ohio 43054.

[2]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

the Debtors having determined, after an extensive marketing process, that Limited IP Acquisition, LLC (the "Purchaser") has submitted the highest and best bid for the Assets; and upon adequate and sufficient notice of the Motion, the Agreement, and all other related transactions contemplated thereunder and in this Order; and all interested parties having been afforded an opportunity to be heard with respect to the Motion and all relief related thereto; and the Court having reviewed and considered (i) the Motion and all relief related thereto, and (ii) any objections thereto, and (iii) the Court having heard statements of counsel and the proffers and other evidence presented in support of the relief requested by the Debtors in the Motion at the hearing on the Bid Protections and at the Sale Hearing (the "Hearings"); and it appearing that the Court has jurisdiction over this matter; and it further appearing that the legal and factual bases set forth in the Motion and at the Hearings establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest; and upon the record of the Hearings and all other pleadings and proceedings in these chapter 11 cases, including the Motion; and after due deliberation thereon; and good and sufficient cause appearing therefor,

**THE COURT HEREBY FINDS THAT:**[3]

**I.**    Jurisdiction, Final Order, and Statutory Predicates

A.    This Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. §§ 157(b)(l) and 1334(a).  Venue is proper in this District and in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[3]    All findings of fact and conclusions of law announced by the Court at the Hearings in relation to the Motion are hereby incorporated herein to the extent not inconsistent herewith.

B.    The statutory predicates for the relief requested in the Motion are sections 105(a), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002(a)(2), 6004, 6006, 9007 and 9014.

C.    This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order, waives any stay and expressly directs entry of judgment as set forth herein.

II.    Notice of the Sale and Cure Amounts

D.    Actual written notice of the Motion, and a reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein, has been afforded to all known interested entities, including, but not limited to the following parties (the "Notice Parties"): (a) the Office of the United States Trustee for the District of Delaware; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) the administrative agent under the Debtors' prepetition term loan; (d) counsel to the administrative agent under the Debtors' prepetition term loan; (e) the agent under the Debtors' debtor-in-possession credit facility; (f) counsel to the agent under the Debtors' debtor-in-possession credit facility; (g) the United States Attorney's Office for the District of Delaware; (h) all taxing authorities having jurisdiction over any of the Assets, including the Internal Revenue Service; (i) the Environmental Protection Agency; (j) the office of the attorneys general for the states in which the Debtors operate; (k) the Securities and Exchange Commission; (*l*) counsel to the Purchaser; (m) all parties that have expressed a written interest in acquiring any of the Assets; (n) the Executory Contract Counterparties; (o) all parties that are known or reasonably believed by the Debtors to

have asserted any lien, encumbrance, claim or other interest in the Assets; (p) all governmental agencies that are known or reasonably believed by the Debtors to be an interested party with respect to the Sale and the related transactions; and (q) any party that has requested notice pursuant to Bankruptcy Rule 2002. As evidenced by the affidavits of service and publication previously filed with the Court [Docket Nos. 83, 84, 109, 113, 117 and 167], and based on the representations of counsel at the Sale Hearing, due, proper, timely, adequate and sufficient notice of the Motion, the Sale Hearing, the Auction, the Sale, and the assumption and assignment of the Executory Contracts to be assumed and assigned to the Purchaser at Closing pursuant to this Order has been provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 9007, and 9014 and in compliance with the Sale Notice Order.

E.      Notice of the Sale Hearing and Sale was timely, proper, and reasonably calculated to provide the Notice Parties and all other interested parties with timely and proper notice of the Sale and the Sale Hearing, and no other or further notice of the Motion, the Auction, the Sale, and the Sale Hearing is, or shall be, required.

F.      A reasonable opportunity to object and be heard with respect to the Sale and the Motion and the relief requested therein has been afforded to all interested persons and entities, including the Notice Parties.

III.    Good Faith of Purchaser

G.      The Agreement was negotiated, proposed, and entered into by the Debtors and the Purchaser without collusion, in good faith, and from arm's-length bargaining positions.

H.      Neither the Debtors nor the Purchaser have engaged in any conduct that would cause or permit the Agreement to be avoided under Bankruptcy Code section 363(n). The Debtors and the Purchaser have not engaged in any conduct that would cause or permit the

Agreement or the consummation of the Sale to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code. The Purchaser (i) recognized that the Debtors were free to deal with any other party interested in acquiring the Assets, (ii) complied with the Sale Notice Order and the Bid Protections Order, and (iii) agreed to subject its bid to the competing bidding procedures set forth in the Sale Notice Order and the Bid Protections Order. All payments to be made by the Purchaser and other agreements or arrangements entered into by the Purchaser in connection with the Sale have been disclosed. The Purchaser is purchasing the Assets in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and is not an "insider" of any Debtor (as defined under section 101(31) of the Bankruptcy Code). The Purchaser has proceeded in good faith in all respects in connection with the Sale. The Purchaser is therefore entitled to all of the protections afforded under section 363(m) of the Bankruptcy Code.

IV.     Highest and Best Offer

I.      The Debtor's marketing process with respect to the Assets, including the Debtors' prepetition marketing process with respect to the Assets, afforded a full, fair, and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Assets. The Agreement constitutes the highest and best offer for the Assets, and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative. The Debtors' determination that the Agreement constitutes the highest and best offer for the Assets constitutes a valid and sound exercise of the Debtors' business judgment.

J.      The Agreement represents a fair and reasonable offer to purchase the Assets under the circumstances of these chapter 11 cases. No other entity or group of entities has offered to purchase the Assets for greater overall value to the Debtor's estates than the Purchaser.

K.    Approval of the Motion and the Agreement and the consummation of the transactions contemplated thereby is in the best interests of the Debtors' chapter 11 estates, their creditors, and other parties in interest.

V.    No Fraudulent Transfer or Merger

L.    The consideration provided by the Purchaser pursuant to the Agreement (i) is fair and reasonable, (ii) is the highest or best offer for the Assets, and (iii) constitutes reasonably equivalent value (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and section 548 of the Bankruptcy Code) and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.  No other person or entity or group of entities has offered to purchase the Assets for greater overall value to the Debtors' estates than the Purchaser.  Approval of the Motion and the Agreement and the consummation of the transactions contemplated thereby is in the best interests of the Debtors, their estates, creditors and other parties in interest.

M.    The Purchaser is not a mere continuation of the Debtors or their estates and there is no continuity of enterprise between the Purchaser and the Debtors.  The Purchaser is not holding itself out to the public as a continuation of the Debtors.  The Purchaser is not a successor to the Debtors or their estates by reason of any theory of law or equity, and the Sale does not amount to a consolidation, merger, or *de facto* merger of Purchaser and the Debtors.

VI.    Validity of Transfer

N.    Each Debtor has, to the extent necessary or applicable, (i) full corporate power and authority to execute and deliver the Agreement and all other documents contemplated thereby, (ii) all corporate authority necessary to consummate the transactions contemplated by the Agreement, and (iii) taken all corporate action necessary to authorize and approve the

Agreement and the consummation of the transactions contemplated thereby. The Sale has been duly and validly authorized by all necessary corporate action. No consents or approvals, other than those expressly provided for in the Agreement, are required for the Debtors to consummate the Sale, the Agreement, or the transactions contemplated thereby.

O.    The Agreement was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession or the District of Columbia. Neither the Debtors nor the Purchaser is entering into the transactions contemplated by the Agreement fraudulently for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims.

P.    The Debtors are the sole and lawful owners of the Assets. The Assets constitute property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code. Subject to section 363(f) of the Bankruptcy Code, the transfer of each of the Assets to the Purchaser will be, as of the Closing Date, a legal, valid, and effective transfer of the Assets, which transfer vests or will vest the Purchaser with all right, title, and interest of the Debtors to the Assets free and clear of (i) all liens (including any liens as that term is defined in section 101(37) of the Bankruptcy Code) and encumbrances relating to, accruing, or arising any time prior to the Closing Date (collectively, the "Liens") and (ii) all debts arising under, relating to, or in connection with any act of the Debtors or claims (as that term is defined in section 101(5) of the Bankruptcy Code), liabilities, obligations, demands, guaranties, options in favor of third parties, rights, contractual commitments, restrictions, interests, mortgages, hypothecations, charges, indentures, loan agreements, instruments, collective bargaining agreements, leases, licenses, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, judgments, claims for reimbursement,

contribution, indemnity, exoneration, infringement, products liability, alter-ego, and matters of any kind and nature, whether arising prior to or subsequent to the commencement of these cases, and whether imposed by agreement, understanding, law, equity or otherwise (including, without limitation, rights with respect to Claims (as defined below) and Liens (A) that purport to give to any party a right of setoff or recoupment against, or a right or option to effect any forfeiture, modification, profit sharing interest, right of first refusal, purchase or repurchase right or option, or termination of, any of the Debtors' or the Purchaser's interests in the Assets, or any similar rights, or (B) in respect of taxes, restrictions, rights of first refusal, charges of interests of any kind or nature, if any, including, without limitation, any restriction of use, voting, transfer, receipt of income or other exercise of any attributes of ownership) (collectively, as defined in this clause (ii), "Claims"), relating to, accruing or arising any time prior to entry of this Order, with the exception of any such Liens or Claims that are expressly assumed by Purchaser under the Agreement (the "Permitted Obligations"), including, for the avoidance of doubt, cure costs or any other obligations arising under the Executory Contracts to the extent set forth in the Agreement.

VII.    Section 363(f) is Satisfied

Q.    The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full; therefore, the Debtors may sell the Assets free and clear of any interest in the property other than the Permitted Obligations.

R.    The Purchaser would not have entered into the Agreement and would not consummate the transactions contemplated thereby if the sale of the Assets to the Purchaser were not free and clear of all Liens and Claims, other than Permitted Obligations, or if the Purchaser would, or in the future could, be liable for any of such Liens and Claims (other than the Permitted Obligations).  Unless otherwise expressly included in the Permitted Obligations, the

Purchaser shall not be responsible for any Liens or Claims, including in respect of the following (all of which shall be deemed included in the definition of Liens and Claims, as applicable, for purposes of this Order): (i) any labor or employment agreements; (ii) all mortgages, deeds of trust and security interests; (iii) intercompany loans and receivables among the Debtors; (iv) any pension, welfare, compensation, or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plan of any Debtor; (v) any other employee, worker's compensation, occupational disease, or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (A) the Employee Retirement Income Security Act of 1974, as amended, (B) the Fair Labor Standards Act, (C) Title VII of the Civil Rights Act of 1964, (D) the Federal Rehabilitation Act of 1973, (E) the National Labor Relations Act, (F) the Worker Adjustment and Retraining Act of 1988, (G) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (H) the Americans with Disabilities Act of 1990, (I) the Consolidated Omnibus Budget Reconciliation Act of 1985, (J) state discrimination laws, (K) state unemployment compensation laws or any other similar state laws, or (L) any other state or federal benefits or claims relating to any employment with any of the Debtors or any of their respective predecessors; (vi) Claims or Liens arising under any environmental law with respect to the operation of the Debtors' business, Excluded Liabilities, the Assets, Excluded Assets, or assets owned or operated by Debtors or any corporate predecessor at any time prior to the Closing Date; (vii) any bulk sales or similar law; (viii) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; and (ix) any theories of successor liability.

S.      The Debtors may sell the Assets free and clear of all Liens and Claims against the Debtors, their estates, or any of the Assets (except the Permitted Obligations) because, in each case, one or more of the standards set forth in section 363(f)(l)-(5) of the Bankruptcy Code has been satisfied.  Those holders of Liens or Claims against the Debtors, their estates, or any of the Assets who did not object, or who withdrew their objections, to the Sale or the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.  All other holders of Liens or Claims (except to the extent that such Liens or Claims are Permitted Obligations) are adequately protected by having their Liens or Claims, if any, in each instance against the Debtors, their estates, or any of the Assets, attach to the net cash proceeds of the Sale ultimately attributable to the Assets in which such creditor alleges a Lien or Claims, in the same order of priority, with the same validity, force, and effect that such Liens or Claims had prior to the Sale, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

VIII.   Cure Costs and Adequate Assurance of Future Performance

T.      The assumption and assignment of the Executory Contracts pursuant to the terms of this Order is integral to the Agreement and is in the best interests of the Debtors and their estates, their creditors, and all other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors.  Subject to the terms and conditions of the Agreement, the Purchaser shall: (i) to the extent necessary, cure or provide adequate assurance of cure, of any default existing prior to the date hereof with respect to the Executory Contracts, within the meaning of sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code, and (ii) to the extent necessary, provide compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof with respect to the Executory Contracts, within the meaning of sections 365(b)(1)(B) and

365(f)(2)(A) of the Bankruptcy Code.  The Purchaser's promise to pay the Cure Amounts and to perform the obligations under the Executory Contracts shall constitute adequate assurance of future performance within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.

IX.    Compelling Circumstances for an Immediate Sale

U.    Good and sufficient reasons for approval of the Agreement and the Sale have been articulated.  The relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties in interest.  The Debtors have demonstrated both (i) good, sufficient, and sound business purposes and justifications for approving the Agreement and (ii) compelling circumstances for the Sale outside the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code before, and outside of, a plan of reorganization, in that, among other things, the immediate consummation of the Sale to the Purchaser is necessary and appropriate to maximize the value of the Debtors' estates and the Sale will provide the means for the Debtors to maximize distributions to creditors.

V.    To maximize the value of the Assets, time is of the essence in consummating the Sale.  Given all of the circumstances of these chapter 11 cases and the adequacy and fair value of Agreement, the proposed Sale of the Assets to the Purchaser constitutes a reasonable and sound exercise of the Debtors' business judgment and should be approved.

W.    The Sale does not constitute a *sub rosa* chapter 11 plan for which approval has been sought without the protections that a disclosure statement would afford.  The Sale neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates a liquidating chapter 11 plan for the Debtors.

X.    The consummation of the Sale and the assumption and assignment of the Executory Contracts is legal, valid, and properly authorized under all applicable provisions of the

Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), and 365, and all of the applicable requirements of such sections have been complied with in respect of the transaction.

**IT IS HEREBY ORDERED THAT:**

**X.**    General Provisions

1.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to these chapter 11 cases pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

2.    The relief requested in the Motion and the transactions contemplated thereby and by the Agreement are approved as set forth in this Order and on the record of the Sale Hearing, which is incorporated herein as if set forth fully in this Order, and the Sale contemplated thereby is approved.

3.    All objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled as announced to the Court at the Sale Hearing or by stipulation filed with the Court, and all reservations of rights included in such objections or otherwise, are hereby denied and overruled on the merits with prejudice. Those parties who did not object or withdrew their objections to the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.

**XI.**    Approval of the Agreement

4.    The Agreement and all other ancillary documents, and all of the terms and conditions thereof, are hereby approved.

5.    Pursuant to sections 363(b) and (f) of the Bankruptcy Code, the Debtors are authorized and empowered to take any and all actions necessary or appropriate to (i) consummate the Sale pursuant to and in accordance with the terms and conditions of the Agreement, (ii) close the Sale as contemplated in the Agreement and this Order, and (iii) execute and deliver, perform under, consummate, implement, and fully close the Agreement, including the assumption and assignment to the Purchaser of the Executory Contracts, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Agreement and the Sale.  The Purchaser shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Agreement or any other Sale related document.  The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence and the other provisions of this Order.

6.    This Order shall be binding in all respects upon the Debtors, their estates, all creditors of, and holders of equity interests in, any Debtor, any holders of Liens, Claims, or other interests (whether known or unknown) in, against or on all or any portion of the Assets, all counterparties to any executory contract or unexpired lease of the Debtors, the Purchaser and all successors and assigns of the Purchaser, the Assets, and any trustees, if any, subsequently appointed in any of the Debtors' chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code of any of the Debtors' cases.  This Order and the Agreement shall inure to the benefit of the Debtors, their estates and creditors, the Purchaser, and the respective successors and assigns of each of the foregoing.

XII.    Transfer of the Assets

7.    Pursuant to sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy Code, the Debtors are authorized to transfer the Assets to the Purchaser in accordance with the

terms of the Agreement and such transfer shall constitute a legal, valid, binding, and effective transfer of such Assets and shall vest Purchaser with title to the Assets and, other than the Permitted Obligations, shall be free and clear of all Liens, Claims, and other interests of any kind or nature whatsoever, with all such Liens, Claims, or other interests to attach to the net cash proceeds ultimately attributable to the property against or in which such Liens, Claims, or other interests are asserted, subject to the terms thereof, with the same validity, force, and effect, and in the same order of priority, which such Liens, Claims, or other interests had prior to the Sale, subject to any rights, claims, and defenses the Debtors or their estates, as applicable, may possess with respect thereto.

8.      The Debtors are hereby authorized to take any and all actions necessary to consummate the Agreement, including any actions that otherwise would require further approval by shareholders, members, or its board of directors, as the case may be, without the need of obtaining such approvals.

9.      The transfer of the Assets to the Purchaser pursuant to the Agreement does not require any consents other than as specifically provided for in the Agreement. Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement. A certified copy of this Order may be filed with the appropriate clerk or recorded with the recorder of any state, county, or local authority to act to cancel any of the Liens, Claims, and other encumbrances of record except those assumed as Permitted Obligations.

10.      If any person or entity that has filed statements or other documents or agreements evidencing Claims or Liens on, or interests in, all or any portion of the Assets (other than

statements or documents with respect to Permitted Obligations) shall not have delivered to the Debtors, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all Claims, Liens, or interests which the person or entity has or may assert with respect to all or any portion of the Assets, the Debtors are hereby authorized and directed, and the Purchaser is hereby authorized, on behalf of the Debtors and the Debtors' creditors, to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Assets.

11.    This Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement.

12.    All persons and entities that are presently, or on the Closing may be, in possession of some or all of the Assets to be sold, transferred or conveyed to the Purchaser pursuant to the Agreement are hereby directed to surrender possession of the Assets to the Purchaser on the Closing Date. Subject to the terms, conditions, and provisions of this Order, all persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely

affect or interfere with the ability of the Debtors to sell and transfer the Assets to the Purchaser in accordance with the terms of the Agreement and this Order.

XIII.   Assumption and Assignment of Executory Contracts.

13.   The Debtors are hereby authorized and directed in accordance with sections 105(a), 363 and 365 of the Bankruptcy Code to (i) assume and assign to Purchaser, in accordance with the terms of the Agreement, the Executory Contracts free and clear of all Liens, Claims, and other interests of any kind or nature whatsoever (other than the Permitted Obligations), and (ii) execute and deliver to Purchaser such documents or other instruments as Purchaser deems may be necessary to assign and transfer the Executory Contracts to Purchaser.

14.   With respect to the Executory Contracts: (i) the Debtors may assume each of the Executory Contracts in accordance with section 365 of the Bankruptcy Code; (ii) the Debtors may assign each Executory Contract in accordance with sections 363 and 365 of the Bankruptcy Code, and any provisions in any Executory Contract that prohibit or condition the assignment of such Executory Contract or allow the party to such Executory Contract to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such Contract, constitute unenforceable anti-assignment provisions which are void and of no force and effect; (iii) all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to Purchaser of each Executory Contract have been satisfied; and (iv) the Executory Contracts shall be transferred and assigned to, and following the closing of the Sale remain in full force and effect for the benefit of, Purchaser, notwithstanding any provision in any such Executory Contract (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy

Code, the Debtors shall be relieved from any further liability with respect to the Executory Contracts after such assumption and assignment to Purchaser.

15.     All defaults or other obligations of the Debtors under the Executory Contracts arising or accruing prior to the closing of the Sale shall be cured by the Purchaser in accordance with the terms of the Agreement.

16.     Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested in all right, title and interest of each Executory Contract.  To the extent provided in the Agreement, the Debtors shall cooperate with, and take all actions reasonably requested by, the Purchaser to effectuate the foregoing.

17.     Each Executory Contract counterparty is deemed to have consented to assumption and assignment, and the Purchaser shall be deemed to have demonstrated adequate assurance of future performance with respect to such Executory Contract pursuant to sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.

18.     Upon the Debtors' assignment of the Executory Contracts to the Purchaser under the provisions of this Order and any additional orders of this Court and Purchaser's payment of any cure amounts pursuant to the terms hereof or the Agreement, no default shall exist under any Executory Contract, and no counterparty to any Executory Contract shall be permitted (i) to declare a default by the Purchaser under such Executory Contract or (ii) to otherwise take action against the Purchaser as a result of any Debtor's financial condition, bankruptcy, or failure to perform any of its obligations under the relevant Executory Contract.  Each non-Debtor party to an Executory Contract hereby is also forever barred, estopped, and permanently enjoined from (i) asserting against the Debtors or Purchaser, or the property of any of them, any default or Claim arising out of any indemnity obligation or warranties for acts or occurrences arising prior

to or existing as of the closing of the Sale, or, against Purchaser, any counterclaim, defense, setoff, or any other Claim asserted or assertable against the Debtors and (ii) imposing or charging against Purchaser or its affiliates any rent accelerations, assignment fees, increases, or any other fees as a result of the Debtors' assumption and assignments to Purchaser of the Executory Contracts.

19.     The failure of the Debtors or Purchaser to enforce at any time one or more terms or conditions of any Executory Contract shall not be a waiver of such terms or conditions, or of the Debtors' and Purchaser's rights to enforce every term and condition of the Executory Contracts.

20.     The Purchaser has provided adequate assurance of future performance under the relevant Executory Contracts within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.

21.     The Purchaser shall be deemed to be substituted for the Debtors as a party to the applicable Executory Contracts and the Debtors shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Executory Contracts.

22.     All counterparties to the Executory Contracts shall cooperate and expeditiously execute and deliver, upon the reasonable requests of the Purchaser, and shall not charge the Debtors or the Purchaser for any instruments, applications, consents or other documents which may be required or requested by any public or quasi-public authority or other party or entity to effectuate the applicable transfers in connection with the Sale of the Assets.

XIV.    Prohibition of Actions Against the Purchaser

23.     Except for the Permitted Obligations, or as otherwise expressly provided for in this Order or the Agreement, the Purchaser shall not have any liability or other obligation of the Debtors arising under or related to any of the Assets.  Without limiting the generality of the

foregoing, and except as otherwise specifically provided herein or in the Agreement, the Purchaser shall not be liable for any Claims or Liens against the Debtors or any of their predecessors or affiliates, and the Purchaser shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, under any theory of antitrust, environmental, successor, or transferee liability, labor law, de facto merger, mere continuation, or substantial continuity, whether known or unknown, now existing or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether liquidated or unliquidated, including, but not limited to, liabilities on account of warranties, intercompany loans, and receivables among the Debtors, and any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of any of the Assets prior to the closing of the Sale.

24.    Except with respect to Permitted Obligations, or as otherwise permitted by the Agreement or this Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade creditors, litigation claimants, and other creditors, holding Liens, Claims, or other interests of any kind or nature whatsoever against or in all or any portion of the Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate), arising under or out of, in connection with, or in any way relating to the Debtors, the Assets, the operation of the Debtors' business prior to the closing of the Sale, or the transfer of the Assets to the Purchaser, hereby are forever barred, estopped and permanently enjoined from asserting against the Purchaser, any of the foregoing's affiliates, successors, or assigns, their property or the Assets, such persons' or entities' Liens, Claims, or interests in and to the Assets, including, without limitation, the following actions:

(i) commencing or continuing in any manner any action or other proceeding against the Purchaser, its affiliates, its successors, assets or properties; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Purchaser, its affiliates, its successors, assets or properties; (iii) creating, perfecting, or enforcing any Lien or other Claim against the Purchaser, its affiliates, its successors, assets, or properties; (iv) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Purchaser, its affiliates or its successors; (v) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; or (vi) revoking, terminating or failing or refusing to transfer or renew any license, permit or authorization to operate any of the Assets or conduct any of the businesses operated with the Assets.

25.    All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Assets to the Purchaser in accordance with the terms of the Agreement and this Order.

26.    Except as provided in the Agreement and without limiting other applicable provisions of this Order, the Purchaser is not, by virtue of the consummation of the Sale, assuming, nor shall it be liable or responsible for, as a successor or otherwise (including with respect to successor or vicarious liabilities of any kind or character), under any theory of law or equity, including any theory of antirust, environmental successor or transferee liability, labor law, de facto merger, or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter raised, which may be asserted or unasserted, fixed or contingent,

liquidated or unliquidated with respect to the Debtors, or any of their predecessors or affiliates or any obligations of the Debtors or their predecessors or affiliates arising prior to the Closing Date, for any liabilities, debts, commitments, or obligations (whether known or unknown, disclosed or undisclosed, absolute, contingent, inchoate, fixed or otherwise) in any way whatsoever relating to or arising from the Assets or the Debtors' operation of their businesses or use of the Assets on or prior to the Closing Date or any such liabilities, debts, commitments, or obligations that in any way whatsoever relate to periods on or prior to the Closing Date or are to be observed, paid, discharged, or performed on or prior to the Closing Date (in each case, including any liabilities that result from, relate to or arise out of tort or product liability claims), or any liabilities calculable by reference to the Debtors or their assets or operations (including by reference to the Debtors' experience or similar ratings), or relating to continuing conditions existing on or prior to the Closing Date, including with respect to any of Debtors' predecessors or affiliates, which liabilities, debts, commitments, and obligations are hereby extinguished insofar as they may give rise to successor liability, without regard to whether the claimant asserting any such liabilities, debts, commitments, or obligations has delivered to the Purchaser a release thereof. The Purchaser has given substantial consideration under the Agreement for the benefit of the holders of any Liens or Claims. The consideration given by the Purchaser shall constitute valid and valuable consideration for the releases of any potential claims of successor liability of the Purchaser, which releases shall be deemed to have been given in favor of the Purchaser by all holders of Liens or Claims against or interests in the Debtors or any of the Assets.

XV.    Other Provisions

27.    The consideration provided by the Purchaser to the Debtors pursuant to the Agreement for the Assets constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act,

and under the laws of the United States, any state, territory, possession or the District of Columbia.

28.      Following the Closing, no holder of a Lien or Claim in or against the Debtors or the Assets shall interfere with the Purchaser's title to or use and enjoyment of the Assets based on or related to such Lien or Claim or any actions that the Debtors may take in these chapter 11 cases or any successor cases.

29.      The transactions contemplated by the Agreement are undertaken by the Purchaser without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale, or the assumption and assignment of the Executory Contracts, unless such authorization and such Sale are duly stayed pending such appeal. The Purchaser is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

30.      Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in (i) these chapter 11 cases, (ii) any subsequent chapter 7 case into which any such chapter 11 case may be converted, or (iii) any related proceeding subsequent to entry of this Order, shall conflict with or derogate from the provisions of the Agreement or the terms of this Order.

31.      For cause shown, pursuant to Bankruptcy Rules 6004(h) and 7062(g), this Order shall not be stayed, shall be effective immediately upon entry, and the Debtors and Purchaser are authorized to close the Sale immediately upon entry of this Order.

32.     The failure to specifically include any particular provision of the Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agreement be authorized and approved in its entirety; *provided that* this Order shall govern if there is any inconsistency between the Agreement (including all ancillary documents executed in connection therewith) and this Order.

33.     The Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court; provided, however, that Debtors shall consult with the Committee and the DIP Agent and/or Pre-Petition Agent regarding any material changes to the Agreement.

34.     The proceeds received by the Debtors pursuant to the terms of the Agreement and this Order shall be paid over by the Debtors to the DIP Agent and/or Pre-Petition Agent in the manner set forth in, and subject to the provisions of, that certain *Final Order (I) Authorizing the Debtors to Obtain Post-Petition Secured Financing Pursuant to Section 364 of the Bankruptcy Code; (II) Authorizing the Debtors to Use Cash Collateral; (III) Granting Liens and Superpriority Administrative Expense Claims; (IV) Granting Adequate Protection to the Pre-Petition Lenders; (V) Modifying the Automatic Stay; and (VI) Granting Related Relief* [DI 233].

35.     The Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Agreement, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which any Debtor is a party or which has been assigned by the Debtors to the Purchaser, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale, including, but not limited to, retaining jurisdiction to (i) compel delivery of the

Case 17-10124-KBO    Doc 276    Filed 02/23/17    Page 24 of 26

Assets to the Purchaser; (ii) interpret, implement, and enforce the provisions of this Order; (iii)

protect Purchaser against any Liens, Claims, or other interest in or against the Sellers or the

Assets of any kind or nature whatsoever, attaching to the proceeds of the Sale; and (iv) enter any

orders under sections 363 and 365 of the Bankruptcy Code with respect to the Executory

Contracts.

36.     To the extent that this Order is inconsistent with any prior order or pleading with

respect to the Motion in these chapter 11 cases, the terms of this Order shall govern.

37.     At the Auction the Debtors designated Sunrise Brands LLC as the Back-Up

Bidder (the "Back-Up Bidder") and the last bid of the Back-Up Bidder as the Back-Up Bid (the

"Back-Up Bid") pursuant to the Asset Purchase Agreement of the Back-Up Bidder (the "Back-

Up Agreement"), which Back-Up Bid and Back-Up Agreement shall remain open until the

earlier to occur of Closing of the Sale to Purchaser under the Agreement or March 9, 2017. At

the Sale Hearing, the Court considered the approval of the Sale to the Back-Up Bidder should the

Purchaser fail to close the Sale under the Agreement. Based upon the record at the Sale Hearing,

all the findings and conclusions set forth herein with respect to the Purchaser, including without

limitation, with respect to adequate assurance of future performance and good faith under section

363 (m) of the Bankruptcy Code apply equally to the Back-Up Bidder; provided, however, that

the findings in paragraphs I, J and K hereof shall apply to the Back-Up Bidder only if the

Purchaser does not Close and the Agreement is terminated in accordance with its terms.

38.     In the event that the Sale with the Purchaser does not Close and the Agreement is

terminated in accordance with its terms, (a) the Motion is GRANTED with respect to a Sale to

the Back-Up Bidder in its capacity as the Back-Up Bidder pursuant to the Back-Up Bid and

Back-Up Agreement; (b) the Debtors shall file a "Notice of Termination of Asset Purchase

Agreement" on the docket of these chapter 11 cases no later than three (3) days after the termination of the Agreement between the Debtors and the Purchaser; (c) the Back-Up Bidder shall be deemed to be the successful bidder and Purchaser hereunder, and the Debtors are authorized and directed to consummate the Sale with the Back-Up Bidder pursuant to the Back-Up Bid and Back-Up Agreement as modified at the Auction without further notice, hearing, or order of the Court.

39.     Notwithstanding anything to the contrary in the Motion, the Agreement, the Bid Protections Order, the Sale Notice Order, any notice of proposed assumption and assignment of contracts, this Order, any document related to any of the foregoing, or any other order of the Court (including any provision that purports to be preemptory or supervening), (i) nothing therein shall permit or otherwise effect a sale, an assignment or any other transfer of any insurance policies that have been issued by ACE American Insurance Company or any of its affiliates, associated organizations, predecessors or successors (collectively, the "Chubb Companies") at any time to (or that actually, potentially or allegedly provide coverage or insurance benefits to) any of the Debtors (or their predecessors) and all agreements, documents or instruments relating thereto (collectively, the "Chubb Insurance Contracts") and/or any rights, benefits, claims, rights to payments and/or recoveries under such Chubb Insurance Contracts; (ii) the Chubb Insurance Contracts and/or any rights, benefits, claims, rights to payments and/or recoveries under such Chubb Insurance Contracts (a) are not and shall not be deemed to be Assets, or a portion of any of the Assets sold, assigned or otherwise transferred as a part of the Sale, and (b) shall be deemed to be excluded from the definition of Assumed Executory Contracts and Acquired Assets under the Purchaser APA or Overbid APA and (iii) nothing therein alters or modifies the terms and conditions of the Chubb Insurance Contracts. To the

extent any of the Chubb Insurance Companies provide insurance coverage for any of the Assets and any such Asset suffers an insurable loss, the Chubb Companies shall handle, administer, settle and/or pay any claim with respect thereto pursuant and subject to the terms of the Chubb Insurance Contracts including, to the extent appropriate, paying insurance proceeds to the Debtors therefor; provided, further, however, that the Debtors shall then promptly turnover any such proceeds to the Purchaser and for the avoidance of doubt, the Chubb Companies shall have no liability to the Purchaser therefor.

Dated: February 23, 2017
       Wilmington, Delaware

                                      HONORABLE KEVIN J. CAREY
                                      UNITED STATES BANKRUPTCY JUDGE