## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>LSC Wind Down, LLC, *et al.*,[1]<br><br>Post-Confirmation Debtors. | Chapter 11<br><br>Case No. 17-10124 (BLS)<br><br>(Jointly Administered)<br><br>**Hearing Date: May 30, 2019 at 9:30 a.m. (ET)**<br>**Objection Deadline: May 20, 2019 at 4:00 p.m. (ET)** |

### MOTION OF PLAN TRUSTEE OF THE LIMITED CREDITORS' LIQUIDATING TRUST PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 FOR APPROVAL OF SETTLEMENT AND ENTRY OF A BAR ORDER

UMB Bank, N.A., solely in its capacity as Plan Trustee (the "Trustee") of The Limited Creditors' Liquidating Trust (the "Trust"), by and through its undersigned counsel, respectfully submits this motion (the "Motion"), pursuant to Federal Rule of Bankruptcy Procedure 9019 ("Rule 9019") and section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), for entry of an order (1) approving the compromise of claims between the Trust and the Limited D&Os (as defined herein), and (2) barring certain claims against the Limited D&Os (as defined herein) relating to their association with the Debtors. Submitted herewith as **Exhibit A** is a proposed order (the "Approval Order") granting this relief. In further support hereof, the Trustee respectfully represents as follows:

### INTRODUCTION

1.    By this Motion, the Trustee seeks approval of the settlement set forth in the Settlement and Release Agreement dated April 22, 2019 (the "Settlement Agreement"), which is attached hereto as **Exhibit B**, by and between the following parties (collectively, the "Parties"):

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: LSC Wind Down, LLC f/k/a Limited Stores Company, LLC (6463), LS Wind Down, LLC f/k/a Limited Stores, LLC (0165), and TLSGC Wind Down, LLC f/k/a The Limited Stores GC, LLC (6094).

(a) the Trustee, on its behalf and on behalf of the Trust; and (b) Jonathan Borell, John D. Buell, Diane Ellis, Linda Heasley, T. Scott King, Don Roach, and Timothy Boates (collectively, the "Limited D&Os").

2.      The Settlement Agreement was reached on a pre-suit basis and is the culmination of extensive, arm's-length negotiations, including a mediation.  The Settlement Agreement provides for a $1.2 million cash settlement payment to the Trustee on behalf of the Limited D&Os.

3.      The Trustee believes the Settlement Agreement is an excellent result for the Trust and its beneficiaries.  The Trustee asserts claims against the Limited D&Os for their alleged breaches of their fiduciary duties as former officers and managers of the Debtors (the "Claims").[2] However, the Limited D&Os deny any wrongdoing and assert a variety of defenses to the Claims, including the statute of limitations and the business judgment rule.

4.      In addition to seeking approval of the Settlement Agreement, the Trustee seeks the entry of an order barring the assertion against the Limited D&Os, any other current or former managers or officers of the Debtors, and any other person or entity who is an insured under the insurance policy issued by National Union Fire Insurance Company of Pittsburgh, Pa., policy number 04-828-29-29 (the "Policy") (a) of any additional claims that are derivative of the Trust's claims and (b) of any claims for contribution or indemnity relating to the claims that have been or could have been asserted by the Trustee, including the Claims.  As a condition of its effectiveness, the Settlement Agreement requires that the Trustee seek this Court's approval of the Settlement Agreement and entry of this Approved Order, including the Bar Provision (as defined below).

---

[2] The term "Claims" include, without limitation, the allegations contained in the herein defined "Committee Demand Letters", "Draft Complaints" and the "Trustee Demand Letter".

## BACKGROUND

### *The Creation of the Trust and Appointment of the Trustee*

5.    On January 17, 2017 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Bankruptcy Proceedings") with the U.S. Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). On January 18, 2017, the Debtors' chapter 11 cases were consolidated for procedural purposes only and were jointly administered pursuant to Bankruptcy Rule 1015.

6.    On August 3, 2017 and October 2, 2017, Kelley Drye & Warrant LLP, as counsel to the Official Committee of Unsecured Creditors (the "Committee") in the Bankruptcy Proceedings, issued demands for monetary relief to certain parties, including the Limited D&Os (the "Committee Demand Letters").

7.    On December 20, 2017, the Bankruptcy Court entered an order (Docket No. 713) confirming the Second Modified Joint Chapter 11 Plan of Liquidation of LSC Wind Down, LLC f/k/a Limited Stores Company, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code (the "Plan"). The Trust was created pursuant to the Plan, and the Debtors' creditors became beneficiaries of the Trust. Plan, Art. 6.1(a) (Docket No. 700).

8.    The Trustee controls and exercises authority over the Trust's assets and is responsible for liquidating and administering those assets and for pursuing the Trust's litigation claims, including the Claims at issue here. Plan, Art. 6.1(c), (h) (Docket No. 700).

### *The Trustee's Claims Against the Defendants*

9.    After its appointment, the Trustee obtained documents relating to the Debtors' pre-bankruptcy management, including the documents relied on by the Committee in connection with its issuance of the Committee Demand Letters. The Trustee's counsel, Reid Collins & Tsai LLP,

3

reviewed these documents, and others publicly available, to assess whether the Trust owned viable claims against the Debtors' former managers and officers.

10.     The Trustee determined that the Trust did possess potential claims for breach of fiduciary duty against the Limited D&Os (all of whom are former officers and/or managers of the Debtors). In connection with an agreement between the Parties to explore the possibility of a pre-suit settlement, the Trustee provided the Limited D&Os with two draft complaints setting forth the factual allegations (the "Draft Complaints"). Among other things, the Draft Complaints included allegations that the Limited D&Os breached their fiduciary duties by causing the Debtors (a) to enter into transactions through which the Debtors incurred significant debt to make a distribution to its members in 2011 that rendered the Debtors insolvent and (b) to incur substantial liability under the the Worker Adjustment and Retraining Notification Act (the "WARN Act"), 29 U.S.C. § 2101 *et seq*. shortly before filing for bankruptcy.

11.     On February 11, 2019, the Trustee issued a settlement demand letter to the Limited D&Os (the "Trustee Demand Letter").

### *The Settlement*

12.     On February 21, 2019, the Parties engaged in pre-suit mediation before Jed Melnick, a well-respected mediator with JAMS Mediation, Arbitration, and ADR Services. After extensive negotiations at mediation, the Parties reached settlement terms, which terms are embodied in the Settlement Agreement (Ex. B).

13.     The Settlement Agreement has the following key terms:[3]

- The Settlement Agreement has an "Effective Date" of April 22, 2019.

---

[3] This summary is provided solely for ease of reference and is qualified in its entirety by reference to the Settlement Agreement, the actual terms of which are controlling here.

- Within thirty (30) days of the Effective Date, and after receipt of a Form W-9 from Trustee's counsel, the Limited D&Os shall cause to be paid, to counsel for the Trustee, $1,200,000 (the "Settlement Funds"), to be held in trust pending the Bankruptcy Court's approval of the Settlement Agreement and entry of the Approval Order. This payment has been made, and the Settlement Funds are currently held in the Trustee's counsel's IOLTA account.

- Within fifteen (15) business days of the receipt of the Settlement Funds by the Trustee's counsel, the Trustee shall move the Bankruptcy Court for approval of the Settlement Agreement and for entry of the Approval Order barring certain claims against the Limited D&Os, any other current or former managers or officers of the Debtors, as well as any other person or entity who is an insured under the Policy.

- Should the Court not enter the Approval Order, (1) the Limited D&Os may void the Settlement Agreement, and (2) if they do so, the Trustee shall return the Settlement Funds to the Limited D&Os, and the Trustee shall proceed to litigate the Claims.

- Should the Court approve the Settlement Agreement and enter the Approval Order, the Trustee's counsel shall transfer the Settlement Funds to the Trust (the "Settlement Payment to Trust").

- Upon the Settlement Payment to Trust, the Trustee shall release the Limited D&Os, the Limited D&Os, any other current or former managers or officers of the Debtors, any other person or entity who is an insured under an insurance policy issued to the Debtors of all claims related to the Debtors. Also, upon the Settlement Payment to the Trust, the Limited D&Os shall release the Trust and the Trustee of all claims, except for any claims expressly preserved under the Approval Order.

## RELIEF REQUESTED

14.     Pursuant to Bankruptcy Code sections 105(a) and Bankruptcy Rule 9019, the

Trustee requests entry of an order substantially in the form as the proposed Approval Order filed

herewith as Exhibit A. The Approval Order (a) approves the compromise of claims between the

Trust and the Limited D&Os, and (b) bars the assertion of any additional claims against the Limited

D&Os, any other current or former manager or officer of the Debtors, as well as any other person

or entity who is an insured under the Policy that (i) are derivative of the Trust's claims or (ii) are

claims for contribution or indemnity, relating to the claims or allegations asserted by, or which could have been asserted by the Trustee.

**BASIS FOR RELIEF REQUESTED**

**A.      The Settlement Agreement Is in the Best Interests of the Trust.**

15.      Federal Rule of Bankruptcy Procedure 9019(a) provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Settlements and compromises are generally favored in bankruptcy cases. *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 394 (3d Cir. 1996).

16.      The decision to approve a settlement "is within the sound discretion of the bankruptcy court." *In re World Health Alts., Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006).  The court need not decide the numerous issues of law and fact raised by the litigation, but rather should canvas the issues to see whether the settlement falls below the lowest point in the range of reasonableness. *See In re Nutritional Sourcing Corp.*, 398 B.R. 816, 833 (Bankr. D. Del. 2008).

17.      To approve a settlement, a bankruptcy court must determine that the proposed settlement is in the best interests of the debtor's estate. *See In re Marvel Entnm't Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998).  The Third Circuit has enumerated four factors to be considered in deciding whether to approve a settlement: (a) the probability of success in litigation; (b) the likely difficulties in collection; (c) the complexity of the litigation involved and the expense, inconvenience, and delay necessarily attending to it; and (d) the paramount interest of creditors. *Martin*, 91 F.3d at 393.  Each of these factors supports approval of the Settlement Agreement.

18.      First, the probability of the Trustee's ultimate success on its claims is uncertain. The Limited D&Os have identified and raised statute of limitations defenses that could significantly reduce the scope of the recoverable damages.  For example, the Limited D&Os argue

6

that any claim related to the 2011 distribution is barred under Delaware's three-year statute of limitations for a breach of fiduciary duty claim. In addition, the governing LLC agreement sets a high liability standard for claims against the Limited D&Os—*i.e.*, "bad faith, gross negligence or willful misconduct." If this case were to be litigated, the Limited D&Os would also argue that their conduct is protected by the business judgment rule and that the Trustee cannot establish that the Limited D&Os acted in bad faith, were grossly negligent, or committed willful misconduct in connection with the alleged wrongful distribution or for allegedly causing the Debtors to incur potential liability under the WARN Act. Although the Trustee believes it has compelling responses to these arguments and strong claims against the Limited D&Os, the success of its Claims is by no means assured.

19.     Second, even if the Trustee were to prevail on its Claims, it would likely encounter difficulty collecting the judgment because the relevant insurance coverage is a wasting policy that defense costs would quickly consume. Although a few of the Limited D&Os may have significant personal assets, there is uncertainty whether the Trustee could obtain judgments for the full amount of its damages against those particular defendants.

20.     Third, litigating the Trust's claims would be a risky, complex, lengthy, and expensive process. Discovery in this case would include significant document discovery and multiple depositions of parties scattered across the country. Litigation of the Trustee's Claims would also require significant and costly expert discovery on various industry specific issues and solvency. Moreover, litigating the claims to a trial judgement would likely take at least several years with no assurance of success during which the Trust would be required to fund the litigation. Finally, if the Claims are filed, the Trustee's legal fees related to any subsequent recovery will increase—i.e., the contingency fee of the Trustee's counsel will increase from 30% to 40% after

7

filing a lawsuit on the Claims. Thus, not only does the cost of litigation increase without a settlement, but so do the legal fees the Trustee ultimately will be required to pay upon a successful result or settlement. By settling the Claims on a pre-suit basis, the Trustee is able to provide the Trust with greater value while at the same time avoiding the inherent risks and delays of litigation.

21.    Fourth, the interests of creditors (the Trust's beneficiaries) strongly weigh in favor of approving the Settlement Agreement. The proposed settlement avoids the substantial costs, delays, and risks of litigating and collecting a judgment on the Trust's claims. The proposed settlement provides an immediate and substantial monetary recovery on those claims.

22.    Finally, the Settlement Agreement is the product of arm's length and contentious negotiations with the involvement of a mediator. The Parties agreed to pursue pre-suit settlement negotiations in December 2018. Pursuant to this agreement, the Trustee provided the Limited D&Os with the Draft Complaints and participated in a mediation. As part of the mediation process, the parties exchanged detailed mediation statements setting forth their respective claims and defenses. After a full day of mediation, and with the help of an independent mediator, the Parties agreed to resolve this dispute pursuant to the terms set forth in the Settlement Agreement.

23.    Thus, all the relevant factors support approval of the Settlement Agreement. The Trustee submits that the Court should approve the compromise of claims between the Trust and the Limited D&Os.

DOCS_DE:223555.1 51411/003

**B.      The Court Should Enter the Approval Order with the Bar Provision.**

24.      The Trustee seeks entry of the Approval Order, which contains the following

provision (the "Bar Provision"):

> All persons and entities are permanently barred, to the fullest extent permitted by
> law, from commencing, prosecuting, asserting, or maintaining the following claims
> against the Limited D&Os (together with their predecessors, successors, affiliates,
> assigns, heirs, beneficiaries, executors, and trustees), any other current or former
> manager or officer of the Debtors, as any other person or entity who is an insured
> under the insurance policy issued by National Union Fire Insurance Company of
> Pittsburgh, Pa., policy number 04-828-29-29 ("Protected Persons"): (1) any claims
> that were or could have been asserted by the Trust, or are derivative of Trust claims,
> including any claims that arise from or relate to the claims asserted or that could
> have been asserted in the Claims, and (2) any claims for indemnity or contribution,
> however pleaded or denominated, based upon arising out of, or relating to claims
> or allegations asserted by, or which could have been asserted by, the Trustee. Any
> joint tortfeasor barred pursuant to this Order shall be entitled to a judgment
> reduction (i.e., setoff) to the extent permitted by applicable law. This Bar Provision
> shall not extinguish the Trustee's claims against the Sun Capital Entities in the
> Florida Action.[4]

25.      This Court has the authority to enter the Approval Order with the Bar Provision

pursuant to section 105(a) of the Bankruptcy Code. *See In re Tribune Co.,* 464 B.R. 126, 176

(Bankr. D. Del. 2011) ("Bankruptcy courts have authority to enter settlement bar orders.").

26.      The first portion of the Bar Provision simply precludes third parties from bringing

the Trust's claims or claims derivative of the Trust's claims. The Trustee has standing to pursue

and resolve the Trust's claims. Moreover, this Court has the authority to bar third parties from

bringing claims derivative of the Debtors' rights, and the Trust's claims are all derivative of the

Debtors' rights. *In re Flintkote Co.,* Case No. 04-11300, 2015 WL 4762580, at *9 (Bankr. D. Del.

Aug. 12, 2015) ("The Debtors have exclusive standing and authority to pursue claims and causes

of action of the Estates, including claims assertable on behalf of, or derivative of, the rights of the

---

[4]  The terms "Sun Capital Entities" and the "Florida Action" are defined in the Settlement Agreement.

Debtors"; approving bar order that barred all third-parties from bringing the debtor's claims, and claims derivative of the debtor's claims, against the released parties); *In re Tronox Inc.,* Case No. 09-10156 (ALG), 2014 WL 5819821, at *16 (Bankr. S.D.N.Y. July 22, 2014).

27.     The second portion of the Bar Provision seeks to bar the assertion of contribution and indemnity claims against the Protected Persons that are related to the claims and allegations released in the Settlement Agreement.  Bar orders protecting settling defendants from indemnity and contribution claims are a mainstay of settlement agreements and are frequently approved by federal courts.  *See, e.g., Eichenholtz v. Brennan*, 52 F.3d 478, 486 (3d Cir. 1995) (approving district court's entry of an indemnity and contribution bar order because, among other reasons, "[m]any states have enacted settlement bar statutes, which allow a bar to the right of contribution if the settlement is made in good faith and the non-settling defendants are entitled to a setoff against any judgment ultimately entered against them"); *Whyte v. Kivisto (In re Semcrude L.P.),* (Adv. No. 09-50819 (BLS), 2010 WL 4814377, at *5-6 & n.6 (Bankr. D. Del. Nov. 19, 2010) (approving settlement bar order barring contribution claims; recognizing that settlement bar orders may extend to indemnity and contribution claims); *In re Tribune Co., 464* B.R. 126, 179-80 (Bankr. D. Del. 2011) (approving contribution and indemnity bar order as part of reorganization plan that included settlement of litigation claims); *Schadel v. Iowa Interstate R.R. Ltd.*, 381 F.3d 671, 673 (7th Cir. 2004) (affirming approval of contribution bar with judgment reduction); *Scholes v. Stone, McGuire & Benjamin*, 839 F. Supp. 1314, 1321 (N.D. Ill. 1993) (entering contribution bar in conjunction with good-faith finding).

28.     Contribution and indemnity bar orders facilitate settlement because "[d]efendants buy little peace through settlement unless they are assured that they will be protected against codefendants' efforts to shift their losses through cross-claims for indemnity, contribution, and

10

other causes related to the underlying litigation." *Munford v. Munford, Inc. (In re Munford, Inc.)*, 97 F.3d 449, 455 (11th Cir. 1996) (alterations in original) (quotations omitted). Such bar orders are granted regardless of whether the non-settling defendants are parties to a case before the court imposing the bar order. *See Whyte v. Kivisto (In re SemCrude, L.P.)*, Bank. No. 08-11525 (BLS), 2010 WL 4814377 (Bankr. D. Del. Nov. 19, 2010) (approving bar order sought by litigation trustee to preclude contribution and indemnity claims against settling defendants, despite opposition of non-settling defendant, which was subject to litigation in another court).

29.    No party is prejudiced by the Bar Provision insofar as it provides for the application of a judgment reduction in favor of any actual joint tortfeasor pursuant to applicable state law. In that respect, no joint tortfeasor is affected by the Bar Provision in a manner that differs from what otherwise would apply by application of state law barring contribution and indemnity claims by joint tortfeasors against settling tortfeasors. *See e.g.*, Del. Code Ann. tit. 10, § 6304(a) (providing that a release reduces the plaintiff's claim against the non-settling joint tortfeasors by the consideration paid for the release). Moreover, under Delaware law, a release of one tortfeasor discharges that tortfeasor "from liability to make contribution to another joint tortfeasor" when the release is given before the right of the other joint tortfeasor to seek contribution has accrued and the release provides for a reduction, to the extent of the pro rata share of the released tortfeasor, of the plaintiff's damages. Del. Code Ann. tit. 10, § 6304(b). The Trustee is not aware of any joint tortfeasor that has a right to contribution from any of the Limited D&Os and any future joint tortfeasor subject to liability would receive a reduction of the amount of such liability in the amount of the consideration paid under the Settlement Agreement. Thus, the Bar Provision merely prevents third parties from bringing contribution and indemnity claims that are otherwise barred by the applicable state law.

11

30.     Obtaining entry of the Bar Provision is a material component of the Settlement Agreement.  Indeed, the Settlement Agreement expressly provides that the Limited D&Os may void the Settlement Agreement if the Court does not enter the Bar Provision.

31.     The Bar Provision also serves the strong public policies in favor of settlement and the equitable apportionment of damages among tortfeasors. *See Johnson v. United Airlines*, 784 N.E.2d 812, 821 (Ill. 2003).  Finally, the Bar Provision assists in preserving the assets for the benefit of the Trust's beneficiaries, and is narrowly tailored.

<u>**NOTICE**</u>

32.     Notice of this Motion has been provided to the (i) United States Trustee and (ii) all persons who have requested notice in the above-captioned bankruptcy case pursuant to Bankruptcy Rule 2002.  Notice of the Motion, with instructions for obtaining a copy of the Motion, has been served on all creditors.

*[Remainder of Page Intentionally Left Blank]*

12

## CONCLUSION

WHEREFORE, for the reasons set forth in this Motion, the Trustee respectfully requests that this Court enter the Approval Order, including the Bar Provision, and granting such other relief as the Court may deem just and proper.


Dated: Wilmington, Delaware        PACHULSKI STANG ZIEHL & JONES LLP
May 6, 2019

                                */s/ James E. O'Neill*
                                Bradford J. Sandler (Bar No. 4142)
                                James E. O'Neill (Bar No. 4042)
                                919 North Market Street, 17th Floor
                                P O Box 8705
                                Wilmington, Delaware 19899 (Courier 19801)
                                Telephone:  (302) 426-1189
                                Facsimile:  (302) 426-9193
                                Email: bsandler@pszjlaw.com
                                         joneill@pszjlaw.com

                                and

                                REID COLLINS & TSAI LLP
                                Eric D. Madden
                                Gregory S. Schwegmann
                                Thanksgiving Tower
                                1601 Elm Street, 42nd Floor
                                Dallas, Texas 75201
                                Telephone: (214) 420-8900

                                *Counsel to UMB Bank, N.A., Plan Trustee of*
                                *The Limited Creditors' Liquidation Trust*