## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------x
:
:    Chapter 11
In re:    :
:    Case No. 17-10124 (CTG)
LSC WIND DOWN, LLC,    :
:
      Post-Confirmation Debtor.    :
:
:
-------------------------------------------------------x
:
:    Chapter 11
In re:    :
:    Case No. 17-10125 (CTG)
LS WIND DOWN, LLC,    :
:
      Post-Confirmation Debtor.    :
:
:
-------------------------------------------------------x
:
:    Chapter 11
In re:    :
:    Case No. 17-10126 (CTG)
TLSGC WIND DOWN, LLC,    :
:
      Post-Confirmation Debtor.    :
:    **Hearing Date:  December 6, 2021 at 1:00 p.m. (ET)**
:    **Objection Deadline:  November 29, 2021 at 4:00 p.m. (ET)**
-------------------------------------------------------x

## MOTION OF THE PLAN TRUSTEE PURSUANT TO 11 U.S.C. §§ 105(a) AND 350(a), FED. R. BANK. P. 3022, DEL. BANKR. L.R. 3022-1 AND SECTION 11.1 OF THE PLAN FOR ORDER AND FINAL DECREE (I) CLOSING THE DEBTORS' CHAPTER 11 CASES; (II) APPROVING ABANDONMENT OF REMAINING PLAN TRUST ASSETS; AND (III) DISCHARGING THE PLAN TRUSTEE AND PLAN TRUST OVERSIGHT COMMITTEE

UMB Bank, National Association, in its capacity as trustee (the "Plan Trustee") of

the Limited Creditors' Liquidating Trust (the "Plan Trust") established in the chapter 11 cases of

LSC Wind Down, LLC (f/k/a Limited Stores Company, LLC) and its affiliates (collectively, the

"Debtors"), by and through its undersigned counsel, hereby submits this motion (the "Motion")

for entry an order pursuant to 11 U.S.C. §§ 105(a) and 350(a), Fed. R. Bankr. P. 3022, Del.

Bankr. L.R. 3022-1 and Section 11.1 of the Plan (defined below), substantially in the form attached hereto as <u>Exhibit A</u> (the "<u>Order and Final Decree</u>"): (i) closing the Debtors' chapter 11 cases; (ii) approving the abandonment of any remaining Plan Trust Assets; and (iii) discharging the Plan Trustee, the Plan Trust Oversight Committee and their respective members, professionals, consultants and/or employees.   In support of the Motion, the Plan Trustee respectfully states as follows:

## <u>JURISDICTION AND VENUE</u>

1.    The Bankruptcy Court has jurisdiction to consider and determine this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and Section 11.1(p) of the Plan.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and other legal predicates for the relief requested herein are sections 105(a) and 350(a) of the Bankruptcy Code, Rule 3022 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), Rules 3022-1 and 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>") and Section 11.1 of the *Second Modified Joint Chapter 11 Plan of Liquidation of LSC Wind Down, LLC f/k/a Limited Stores Company, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* dated December 15, 2017 (the "<u>Plan</u>").[1]

2.    Pursuant to Local Rule 9013-1(f), solely in its capacity as Plan Trustee, the Plan Trustee consents to the entry of final orders or judgments by the Bankruptcy Court if it is determined that the Bankruptcy Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

---

[1]    Docket No. 700.  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

2

**BACKGROUND**

A.    **Case Background**

3.    On January 17, 2017 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  From and after the Petition Date, through the Effective Date of the Plan, each Debtor operated its business and managed its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.    By order entered January 18, 2017, the Bankruptcy Court authorized the Debtors to retain Donlin Recano & Company, Inc. (the "Claims Agent") as claims and noticing agent, a role in which it continues to serve through the present.[2]

5.    On February 16, 2017, the Bankruptcy Court entered the *Order Establishing Deadlines for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof*[3] establishing (a) April 5, 2017 at 5:00 p.m. (ET) as the last date, for persons or entities other than governmental units, to file proofs of prepetition claims, including administrative expense claims arising pursuant to section 503(b)(9) of the Bankruptcy Code; and (b) July 17, 2017 at 5:00 p.m. (ET) as the last date for governmental units to file proofs of claim.

6.    On December 20, 2017, the Bankruptcy Court entered an order confirming the Plan (the "Confirmation Order").[4]  According to the Debtors' disclosure statement in support of the Plan, as of the date the Plan was confirmed, holders of allowed General Unsecured Claims were projected to recover less than 1% of their allowed claim amount.[5]

---

[2]    Docket No. 58.

[3]    Docket No. 235.

[4]    Docket No. 713.

[5]    Disclosure Statement, § 3.5.4 [Docket No. 617].

7.      The Plan became effective on January 2, 2018 (the "Effective Date").[6]

8.      Section 6.1 of the Plan provides for the establishment of the Plan Trust as of the Effective Date.  Upon the occurrence of the Effective Date, the Plan Trustee was appointed to administer the Plan Trust and the Plan Trust Assets, pursuant to the terms of the Plan, the Confirmation Order and that certain *Liquidating Trust Agreement and Declaration of Trust* dated as of January 2, 2018 (the "Plan Trust Agreement").

## B.      Asset Recoveries

9.      Immediately prior to the Petition Date, the Debtors sold their existing brick-and-mortar inventory through liquidation sales that concluded by January 8, 2017, resulting in the closure of all retail stores and vacation of all underlying premises shortly thereafter.[7]  Following commencement of these chapter 11 cases, the Debtors sold their intellectual property and e-commerce assets to Limited IP Acquisition LLP for a purchase price of $26.75 million.[8]  With the authority of the Bankruptcy Court, the Debtors also sold excess inventory and certain other *de minimis* assets on a pre-confirmation basis, for a total purchase price of approximately $1.16 million.[9]

10.     As of the Effective Date of the Plan, the Plan Trust Assets transferred to and vested in the Plan Trust included: (a) all of the Debtors' remaining assets which had not been liquidated prior to the Effective Date; (b) all Cash of the Debtors (less amounts funded into the Professional Fee Escrow); and (c) all Causes of Action, including Third Party Claims.[10]

---

[6]      Docket No. 1157.

[7]      *See* Disclosure Statement § 2.2.4.

[8]      *See id.* § 2.3.4; *see also* Docket No. 276.

[9]      *See* Disclosure Statement § 2.3.4.

[10]     Plan §§ 1.74 and 6.1(a).

4

Immediately upon its appointment, the Plan Trustee began its work to monetize the non-Cash Plan Trust Assets for the benefit of the Debtors' creditors.

11.     To that end, the Plan Trustee pursued numerous Causes of Action that, coupled with the Plan Trustee's endeavors to rationalize the claims pool as discussed below, have generated net proceeds sufficient to deliver to holders of allowed General Unsecured Claims more than three times the recovery predicted by the Disclosure Statement. The most significant of these Causes of Action were two separate categories of litigation claims, one against the Debtors' former officers and directors and the other against the Debtors' former majority shareholders and their affiliates, both of which required years of diligent effort to see through to fruition. After reviewing thousands of transfers made during the 90-day preference period, the Plan Trustee also commenced and fully resolved more than 125 Avoidance Actions for the benefit of these estates.

12.     In addition to its litigation activities, Plan Trustee also successfully recovered receivables payable by counterparties under various contractual relationships, including the return of deposits, collateral and overpayments that the Debtors previously paid to third parties. Finally, after a competitive auction, the Plan Trustee sold the Debtors' rights to recovery as putative class members in antitrust litigation pending against Visa and MasterCard, among other defendants. Taken together, the Plan Trustee's liquidation of non-Cash Plan Trust Assets produced over $5 million in proceeds available to fund Trust operations and, ultimately, for creditor distributions.

13.     Accordingly, the Plan Trustee has substantially completed its duties with respect to asset recovery. At present: (a) all litigation pursued by the Plan Trust has been brought to a full and final resolution; (b) all assets of the Plan Trust of any consequential value

5

have been liquidated; and (c) as discussed below, the Plan Trustee has determined that the remaining Plan Trust Assets, consisting primarily of books and records, are of inconsequential value and should be abandoned.

## C.    The Claims Administration Process

14.    Sections 6.1(c), 6.1(f)(I), 7.2 and 8.1 of the Plan provide that the Plan Trustee is responsible for reconciling, objecting (if necessary), and resolving all Claims and making Distributions on account of all Claims.

15.    More than 1,440 Claims were filed against the Debtors' estates (across all priorities), in addition to approximately 450 non-zero Claims that were included by the Debtors on their Schedules.  With the authority afforded it under the Plan, the Plan Trustee: (a) filed eight omnibus objections seeking the reclassification, reduction or disallowance of Administrative Claims, Priority Tax Claims, Other Secured Claims and General Unsecured Claims; (b) filed two notices identifying claims fully satisfied post-petition and publicizing the Plan Trustee's intent to mark such claims as satisfied and ineligible for any distribution from the Plan Trust; (c) matched approximately 100 scheduled Claims to filed proofs of claim pursuant Bankruptcy Rule 3003(c)(4), preventing a double recovery on those Claims; and (d) informally negotiated with creditors and resolved other disputed Claims that were not the subject of a filed objection or satisfaction notice.

16.    As a result of the Plan Trust's reconciliation process, the Claims pool in the Debtors' cases has been significantly reduced.  The filed and scheduled General Unsecured Claims pool initially comprised approximately $315 million.  By contrast, for distribution purposes, the projected final Allowed General Unsecured Claims pool consists of approximately 410 filed and scheduled claims in the aggregate amount of approximately $126 million, a

6

reduction of 60% in dollar amount.[11]    Additionally, excluding lender claims, the secured, administrative and priority claims pool initially consisted of approximately $38 million in the aggregate, which ultimately was reduced to approximately $2 million in Allowed amount,[12] and was fully satisfied as provided in the Plan.

17.    Accordingly, all filed and scheduled Claims across all priority levels have been fully and finally resolved.

**D.    Distributions**

18.    As of the date of the hearing on this Motion, the Plan Trust will have made or provided for all Distributions and other payments required under the Plan.

19.    On a rolling basis from and after the Effective Date, the Plan Trustee has paid nearly all allowed secured, administrative and priority claims in full.[13]  With the conclusion of the Claims reconciliation process and the liquidation of all Plan Trust Assets of value, the Plan Trustee is positioned to make a first and final Distribution to holders of Allowed General Unsecured Claims, which will be effectuated prior to the end of the calendar year.  The Plan Trustee is currently refining the precise amount and timing of the final distribution, but anticipates that it will amount to approximately 3% of the Allowed amount of each claim, which is more than three times the projected recovery for unsecured creditors set forth in the Disclosure Statement (less than 1%).

---

[11]    These amounts assume that pending objections and other motions affecting certain Claims, currently scheduled to be heard on the same date as this Motion (and as to which applicable response deadlines have not yet passed), are granted.

[12]    The final aggregate Allowed amount of the senior claims pool does not include the $810,625 payment made in respect of the settlement of the WARN Action, which was approved pursuant to Bankruptcy Rule 9019 three days after the Effective Date of the Plan.  *See* Docket Nos. 620, 748.

[13]    Distributions with respect to five Allowed senior claims that have not yet been paid will be made prior to, or substantially contemporaneous with, Distributions to unsecured creditors.

20.     Accordingly, the transactions contemplated by the Plan have been effectuated, and the Plan has been substantially consummated within the meaning of section 1101(2) of the Bankruptcy Code.

### E.     Reporting Requirements and Statutory Fees

21.     Since the Effective Date of the Plan, the Plan Trustee has filed all required post-confirmation quarterly reports required of it, and has attached the *Final Report in Chapter 11 Cases* required by Local Rule 3022-1(c) as <u>Exhibit B</u> to this Motion (the "<u>Final Report</u>").

22.     In accordance with Section 13.10 of the Plan, the Plan Trust is current on applicable United States Trustee fees through the third calendar quarter of 2021.  The Plan Trustee will make arrangements to prepay the U.S. Trustee fees for the fourth calendar quarter of 2021,[14] calculated based disbursements actually made and anticipated to be made through December 31, 2021 (including the approximate 3% distribution to be made to holders of Allowed General Unsecured Claims).

### RELIEF REQUESTED

23.     The Plan Trustee respectfully requests that this Court enter the Order and Final Decree: (a) closing the Debtors' chapter 11 cases; (b) approving the abandonment of remaining Plan Trust Assets; (c) discharging the Plan Trustee, the Plan Trust Oversight Committee, and their respective professionals, consultants and employees; and (d) granting certain additional relief requested herein that is incident to closing these cases.

---

[14]     United States Trustee fees for the fourth calendar quarter of 2021 would ordinarily come due on or about January 22, 2022.

DOCS_DE:236965.1 51411/002

## BASIS FOR RELIEF

24.     Bankruptcy Code section 350(a) provides for closure of a bankruptcy case after the estate has been fully administered.[15]  In addition, Bankruptcy Rule 3022 provides that, "[a]fter an estate is fully administered in a chapter 11 reorganization case, the court, on its own motion or on motion of a party in interest, shall enter a final decree closing the case."[16]

25.     Local Rule 3022-1(a) provides that "[u]pon written motion, a party in interest may seek the entry of a final decree at any time after the confirmed plan has been fully administered provided that all required fees due under 28 U.S.C. § 1930 have been paid."[17] Furthermore, section 105 of the Bankruptcy Code provides, in pertinent part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."[18]

26.     The 1991 Advisory Committee Note to Bankruptcy Rule 3022 lists the following factors to be considered in determining whether a case has been fully administered:

(a)     whether the order confirming the plan of reorganization has become final;

(b)     whether deposits required by the plan of reorganization have been distributed;

(c)     whether property proposed by the plan of reorganization to be transferred has in fact been transferred;

(d)     whether the debtor has assumed the business addressed by the plan of reorganization;

(e)     whether payments under the plan of reorganization have commenced; and

---

[15]     *See* 11 U.S.C. § 350(a).

[16]     Fed. R. Bankr. P. 3022.

[17]     Del. Bankr. L.R. 3022-1(a).

[18]     11 U.S.C. § 105(a).

(f)     whether all motions, contested matters and adversary proceedings have been finally resolved.[19]

A.      <u>**The Debtors' Estates Have Been Fully Administered**</u>

27.     All of the factors articulated in the Advisory Committee Note weigh in favor of closing the Debtors' cases, or do not apply:

- The Confirmation Order was entered in December 2017 and became effective in January 2018, and the Plan has been substantially consummated within the meaning of section 1101(2) of the Bankruptcy Code;

- The Plan did not require the Debtors to distribute any deposits;

- All property of the Debtors to be transferred under the Plan has in fact been transferred, in that on the Effective Date, all assets of the Debtors that remained following the sale of the Debtors' intellectual property and e-commerce business, excess inventory and miscellaneous *de minimis* assets, irrevocably were transferred to, and automatically were vested in, the Plan Trust and became Plan Trust Assets for purposes of further administration and Distribution;[20]

- All Causes of Action transferred to the Plan Trust have been brought to full and final resolution;

- All Claims against the Debtors' estates were reviewed and reconciled, and all objections to Claims have been fully and finally resolved;

- The Debtors liquidated pursuant to the Plan and did not assume any business.  The Debtors' assets and liabilities were administered by the Plan Trustee in accordance with the Plan and Confirmation Order;

- All motions, contested matters and adversary proceedings in these cases have been fully and finally resolved; and

- The Plan Trustee has made, or in the near term will make, all Distributions and other payments required of it under the Plan. Following the hearing date of this Motion, the Plan Trustee intends to pay a small handful of remaining senior claims in full, and will

---

[19]     *See* Fed. R. Bank. P. 3022, Advisory Committee Note (1991).

[20]     Plan §§ 1.74 and 6.1(a).

10

make a first and final Distribution to holders of Allowed General Unsecured Claims of approximately 3%.[21]

Review of these factors shows there is nothing left to do in the Debtors' chapter 11 cases and no reason to keep them open. Further, pursuant to 28 U.S.C. § 1930(a), the Plan Trustee has paid all quarterly United States Trustee fees owing through September 30, 2021, and will provide for the prepayment of fees that will become due following the close of the fourth calendar quarter of 2021. Finally, as noted above, the Final Report required by Local Rule 3022-1(c) is attached hereto as Exhibit B.

28.     In view of the foregoing, the Plan Trustee respectfully requests that the Bankruptcy Court enter the proposed Order and Final Decree.

**B.     Termination of Claims and Noticing Services**

29.     The Plan Trustee respectfully requests that Order and Final Decree include a provision relieving the Claims Agent of any further obligations with respect to claims and noticing services.

30.     In accordance with Local Rule 2002-1(f)(ix), the Order and Final Decree will contain a provision requiring the Claims Agent, within 28 days after the entry of the Order and Final Decree, to: (a) forward to the Clerk of the United States Bankruptcy Court for the District of Delaware an electronic version of all imaged claims; (b) upload the creditor mailing list into CM/ECF; (c) docket a final claims register; and (d) to the extent it has not done so

---

[21]     As noted, the Plan Trustee expects to make final Distributions to holders of Allowed General Unsecured Claims prior to the end of calendar year 2021. To the extent that final Distributions are not completed by the hearing on this Motion, that circumstance would not preclude entry of the Order and Final Decree. Consistent with the Advisory Committee Note's recognition that payments contemplated by a plan need not be concluded before an estate is considered "fully administered," numerous courts have permitted closure of a chapter 11 case prior to the completion of distributions. *See, e.g., In re Johnson*, 402 B.R. 851, 856 (Bankr. N.D. Ind. 2009) ("Although the debtor has not completed the plan payments, that does not prevent a case from being fully administered."); *Wells Fargo Bank, N.A. v. D & L Nicolaysen (In re D & L Nicolaysen)*, 228 B.R. 252, 261 (Bankr. E.D. Cal. 1998) ("A case may be fully administered even though all payments to creditors have not been completed.") (*citing In re Ground Systems, Inc.*, 213 B.R. 1016, 1019 (9th Cir. BAP 1997)).

already, box and transport all original Claims to the Philadelphia Federal Records Center, 14470 Townsend Road, Philadelphia, Pennsylvania 19154 and docket a completed SF-135 Form indicating the accession and location numbers of the archived claims.[22]

## C.    Abandonment of Remaining Trust Assets

31.    Sections 3.2.18 and 3.4 of the Plan Trust Agreement gives the Plan Trustee the right to abandon or donate to a charitable organization any Plan Trust Assets, to the extent that the Plan Trustee concludes such assets are of no benefit to creditors of the Debtors or are not practicable to distribute.  As noted above, the Plan Trustee has liquidated all valuable assets of the Plan Trust.  Further, the Plan Trustee has determined that any remaining Plan Trust assets, consisting primarily of books and records, are of inconsequential value to the Plan Trust and its creditor beneficiaries.  Accordingly, the Plan Trustee's abandonment of the remaining assets should be approved.

## D.    The Plan Trustee, the Plan Trust Oversight Committee and its Members Should Be Granted a Complete Discharge

32.    By this Motion, the Plan Trustee respectfully requests that the Order and Final Decree expressly discharge and relieve the Plan Trustee, the Plan Trust Oversight Committee and their respective members, professionals, consultants and/or employees of any further duties and from all liability related to the Plan Trust and the Debtors' chapter 11 cases, to be immediately effective on the later of: (a) the date that the Order and Final Decree is entered; and (b) to the extent that the Plan Trust makes final Distributions subsequent to the entry of the Order and Final Decree, the date that final Distributions are first issued, in both cases, without further order of the Bankruptcy Court.

---

[22]    *See* Del. Bankr. L.R. 2002-1(f)(ix).

33.    The Plan Trustee respectfully submits that the request for a complete discharge is warranted under the circumstances and should be approved, as these estates have been administered post-confirmation in a manner that has outperformed expectations.  All Plan Trust Assets of value have been monetized, all Claims have been resolved, and the Plan Trust is positioned to issue Distributions to holders of Allowed General Unsecured Claims that, while modest, are more than three times the percentage projected by the Disclosure Statement. Notably, more than half of the post-confirmation operations of the Plan Trust have been conducted, seamlessly, in the midst of a global pandemic.  Accordingly, by all measures, these chapter 11 cases have been successfully concluded.

## NOTICE

34.    In accordance with Del. Bankr. L.R. 3022-1(b), notice of this Motion has been provided to: (a) the Office of the U.S. Trustee; and (b) all other persons who have requested notice in the above-captioned bankruptcy cases pursuant to Bankruptcy Rule 2002.  No official committees remain to be served.

## PRIOR RELIEF

35.    No previous motion for the relief requested in this Motion has been made to this or any other court.

WHEREFORE, the Plan Trustee respectfully requests that this Court enter an Order and Final Decree, substantially in the form attached hereto as <u>Exhibit A</u>: (a) closing each of the Debtors' chapter 11 cases; (b) approving the abandonment of remaining Plan Trust Assets; (c) relieving the Claims Agent from any further obligations as claims and noticing agent; (d) discharging the Plan Trustee, the Plan Trust Oversight Committee and their respective members, professionals, consultants and/or employees from all duties and obligations under the Plan and the Plan Trust Agreement, and discharging such Persons from all liability related to the Plan Trust and the Debtors' chapter 11 cases as more fully set forth in the proposed Order and Final Decree; and (e) granting such other and further relief as this Court deems just and proper.

Dated: Wilmington, Delaware
         November 12, 2021

PACHULSKI STANG ZIEHL & JONES LLP

By: */s/ James E. O'Neill*
Bradford J. Sandler (Bar No. 4142)
James E. O'Neill (Bar No. 4042)
919 North Market Street, 17th Floor
P O Box 8705
Wilmington, Delaware 19899 (Courier 19801)
Telephone:  (302) 426-1189
Facsimile:  (302) 426-9193
Email: bsandler@pszjlaw.com
         joneill@pszjlaw.com

and

KELLEY DRYE & WARREN LLP
James S. Carr (admitted *pro hac vice*)
Kristin S. Elliott (admitted *pro hac vice*)
3 World Trade Center
175 Greenwich Street
New York, New York 10007
Telephone: (212) 808-7800
Facsimile: (212) 808-7897
Email: jcarr@kelleydrye.com
         kelliott@kelleydrye.com

and

KELLEY DRYE & WARREN LLP
Dana P. Kane, Esq. (admitted *pro hac vice*)
One Jefferson Road, Second Floor
Parsippany, New Jersey 07054
Telephone: (973) 503-5900
Facsimile: (973) 503-5950
Email: dkane@kelleydrye.com

*Counsel to the Plan Trustee*