# EXHIBIT B

**(Final Report)**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
-----------------------------------------------------x
                                                     :
                                                     :   Chapter 11
In re:                                               :
                                                     :   Case No. 17-10124 (CTG)
LSC WIND DOWN, LLC, et al.,¹                         :
                                                     :   (Substantively Consolidated)
         Post-Confirmation Debtors.                  :
                                                     :
                                                     :
-----------------------------------------------------x
```

## FINAL REPORT IN CHAPTER 11 CASES

To the best of my knowledge, information, and belief, the following is a breakdown of the results in the above-captioned chapter 11 cases (the "Chapter 11 Cases"):

## BACKGROUND

1. On January 17, 2017 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. From and after the Petition Date, through the Effective Date of the Plan, each Debtor operated its business and managed its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. On December 20, 2017, the Bankruptcy Court entered an order (the "Confirmation Order")² confirming the *Second Modified Joint Chapter 11 Plan of Liquidation of*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: LSC Wind Down, LLC f/k/a Limited Stores Company, LLC (6463); LS Wind Down, LLC f/k/a Limited Stores, LLC (0165); and TLSGC Wind Down, LLC f/k/a The Limited Stores GC, LLC (6094).

[2] Docket No. 713.

*LSC Wind Down, LLC f/k/a Limited Stores Company, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* dated December 15, 2017 (the "Plan").[3]

3. No appeal was taken from entry of the Confirmation Order, and the Confirmation Order has become a Final Order.

4. Immediately prior to the Petition Date, the Debtors sold their existing brick-and-mortar inventory through liquidation sales that concluded by January 8, 2017, resulting in the closure of all retail stores and vacation of all underlying premises shortly thereafter.[4] Following commencement of these chapter 11 cases, the Debtors sold their intellectual property and e-commerce assets to Limited IP Acquisition LLP for a purchase price of $26.75 million.[5] With the authority of the Bankruptcy Court, the Debtors also sold excess inventory and certain other *de minimis* assets on a pre-confirmation basis, for a total purchase price of approximately $1.16 million.[6]

5. As of the Effective Date of the Plan, the Plan Trust Assets transferred to and vested in the Plan Trust included: (a) all of the Debtors' remaining assets which had not been liquidated prior to the Effective Date; (b) all Cash of the Debtors (less amounts funded into the Professional Fee Escrow); and (c) all Causes of Action, including Third Party Claims.[7]

6. The Plan became effective on January 2, 2018 (the "Effective Date").[8] Section 6.1 of the Plan provides for the establishment of the Plan Trust as of the Effective Date. Upon the occurrence of the Effective Date, the Plan Trustee was appointed to administer the Plan

---

[3] Docket No. 700. Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

[4] *See* Disclosure Statement § 2.2.4.

[5] *See id.* § 2.3.4; *see also* Docket No. 276.

[6] *See* Disclosure Statement § 2.3.4.

[7] Plan §§ 1.74 and 6.1(a).

[8] Docket No. 1157.

2

Trust and the Plan Trust Assets, pursuant to the terms of the Plan, the Confirmation Order and that certain *Liquidating Trust Agreement and Declaration of Trust* dated as of January 2, 2018 (the "Plan Trust Agreement").

7. No trustee or examiner was appointed in the Chapter 11 Cases. Accordingly, no fees were incurred for a trustee or trustee's counsel.

8. On November 5, 2021, the Plan Trustee filed the *Motion of the Plan Trustee Under 11 U.S.C. §§ 105(a) and 350(a), Fed. R. Bank. P. 3022, Del. Bankr. L.R. 3022-1 and Section 11.1 of the Plan for Order and Final Decree (I) Closing the Debtors' Chapter 11 Cases; (II) Approving Abandonment of Remaining Trust Assets; and (III) Discharging the Plan Trustee and Plan Trust Oversight Committee* (the "Motion for Final Decree"), which is scheduled to be heard on December 6, 2021.

**FEES AND EXPENSES / DISTRIBUTIONS / TRUST ASSET ADMINISTRATION**

9. All required fees due under 28 U.S.C. § 1930: (a) have been paid through the end of the third calendar of 2021; and (b) to the extent of fees for the fourth calendar quarter of 2021, which would otherwise come due in January 2022, will be prepaid prior to December 31, 2021.

10. The fees and expenses awarded to and paid to professionals in the cases from the Petition Date through the Effective Date of the Plan amounted to $2,971,903 in the aggregate, and are set forth in detail on the attached Exhibit 1.

11. All distributions to be made under the Plan have been made and/or will be made shortly after the Motion for Final Decree is scheduled to be heard by this Court, and are set forth on the attached Exhibit 2.

12. Subject to the foregoing, all assets of the Plan Trust have been

3

administered or, where the Plan Trustee has determined they are of inconsequential value to the Plan Trust and its beneficiaries, will be abandoned upon entry of the order granting the Motion for Final Decree.

| | |
|---|---|
| Date: November 12, 2021 | By: UMB Bank, National Association, not individually, but solely in its capacity as Plan Trustee of the Limited Creditors' Liquidating Trust |
| | */s/ Tina Vitale*<br>Name: Tina Vitale<br>Title: Senior Vice President |

4

# EXHIBIT 1

*In re LSC Wind Down, LLC, et al.*,
Case No. 17-10124 (CTG)
**Cumulative Professional Fees and Expenses**
**January 17, 2017 through and including January 2, 2018**

| Name of Professional | Professional Services Provided | Cumulative Fees | Cumulative Expenses | Total |
|---|---|---|---|---|
| CBIZ Accounting Tax & Advisory of New York, LLC | Financial Advisor the Official Committee of Unsecured Creditors | $521,041.00 | $592.50 | $521,633.50 |
| Donlin, Recano & Company, Inc. | Administrative Agent to the Debtors | $25,586.00 | $0.00 | $25,586.00 |
| Kelley Drye & Warren LLP | Lead Counsel to the Official Committee of Unsecured Creditors | $1,098,558.30 | $13,890.82 | $1,112,449.12 |
| Klehr Harrison Harvey Branzburg LLP | Lead Counsel to the Debtors | $1,005,011.00 | $0.00 | $1,005,011.00 |
| KPMG LLP | Tax Consultants to the Debtors | $152,712.30 | $55.20 | $152,767.50 |
| Pachulski Stang Ziehl & Jones LLP | Local Counsel to the Official Committee of Unsecured Creditors | $146,800.50 | $7,455.59 | $154,256.09 |
| **TOTAL** | | **$2,949,709.10** | **$21,994.11** | **$2,971,703.21** |

## EXHIBIT 2

## Summary of Distributions Under the Plan[1]

| PLAN CLASS | DESCRIPTION OF CLAIMS OR INTERESTS | SUMMARY OF DISTRIBUTIONS RECEIVED UNDER THE PLAN | AGGREGATE RECOVERY |
|---|---|---|---|
| N/A | DIP Claims | The DIP Facility was indefeasibly paid in full, in Cash, prior to confirmation of the Plan. The DIP Agent and DIP Lender had no further Claim against the Debtors and did not receive any Distributions under the Plan. | N/A |
| N/A | Administrative Claims | Administrative Claims – Each holder of an Allowed Professional Fee Claim was paid from the Professional Fee Claim Escrow after such each such Claim was approved by order of the Bankruptcy Court. | 100% |
| | | Administrative Claims – Substantial Contribution Claims: no Claims of this nature were asserted. | N/A |
| | | Administrative Claims – 503(b)(9) Claims: Each holder of an Allowed Section 503(b)(9) Claim was paid in full in Cash by the Plan Trustee. | 100%[2] |
| | | Administrative Claims – Administrative Tax Claims: Each Holder of an Allowed Administrative Tax Claim was paid in full in Cash by the Plan Trustee. | 100% |
| N/A | Priority Tax Claims | Each Holder of an Allowed Priority Tax Claim received Cash equal to the unpaid portion of the Face Amount of such Allowed Priority Tax Claim. | 100%[3] |
| 1 | Prepetition Revolving Secured Claim | The holder of the Prepetition Revolving Secured Claim was indefeasibly paid in full, in Cash, prior to the Petition Date. The holder of the Prepetition Revolving Secured Claim had no further Claim against the Debtors and did not receive any Distributions under the Plan. | N/A |
| 2 | Prepetition Term Secured Claim | The holder of the Prepetition Term Secured Claim was indefeasibly paid in full, in Cash, prior to confirmation of the Plan. The holder of the Prepetition Term Secured Claim had no further Claim against the Debtors and did not receive any Distributions under the Plan. | N/A |

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the *Second Modified Joint Chapter 11 Plan of Liquidation of LSC Wind Down, LLC f/k/a Limited Stores Company, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code dated December 15, 2017* (the "Plan") or the Motion for Final Decree, as applicable. The information set forth in the above table is for convenience of reference only. Each Holder of a Claim or Interest should refer to the Plan for a full description of the classification and treatment of Claims and Interests provided under the Plan.

[2] There remains one Allowed Administrative Claim asserted pursuant to section 503(b)(9) of the Bankruptcy Code that has not been paid as of the date hereof, which Claim the Plan Trustee intends to pay in Cash, in full, prior to the end of calendar year 2021.

[3] There remains one Allowed Priority Tax Claim that has not been paid as of the date hereof, which Claim the Plan Trustee intends to pay in Cash, in full, prior to the end of calendar year 2021.

| PLAN CLASS | DESCRIPTION OF CLAIMS OR INTERESTS | SUMMARY OF DISTRIBUTIONS RECEIVED UNDER THE PLAN | AGGREGATE RECOVERY |
|---|---|---|---|
| 3 | Liberty Mutual Secured Claim | The holder of the Liberty Mutual Secured Claim received the sum agreed by the Debtors, the Plan Trustee and Liberty Mutual from the Cash held by Liberty Mutual to collateralize the Liberty Mutual Secured Claim, and the balance of such Cash held by Liberty Mutual was returned to the Plan Trust. | **100%** |
| 4 | Miscellaneous Secured Claims | Each holder of a Miscellaneous Secured Claim received, at the discretion of the Plan Trustee: (a) Cash in an amount equal to the lesser of (i) the amount of such Allowed Miscellaneous Secured Claim and (ii) the value of the Debtors' property securing such Miscellaneous Secured Claim in the possession of the Debtors or the Plan Trust, minus the amount of claims secured by such property with legal priority senior to the lien priority of the holder of such Allowed Miscellaneous Secured Claim; (b) delivery of the property securing such Allowed Miscellaneous Secured Claim; or (c) other treatment such that the Allowed Miscellaneous Secured Claim was rendered Unimpaired. | **100%[4]** |
| 5 | Priority WARN Claims | The holder of the Allowed Priority WARN Claim was paid in Cash, in full, in the amount set forth in the settlement agreement approved by the Bankruptcy Court pursuant to Bankruptcy Rule 9019. | **100%** |
| 6 | Priority Non-Tax Claims | Each Holder of an Allowed Priority Non-Tax Claim received Cash equal to the amount of the Allowed Priority Non-Tax Claim. | **100%[5]** |
| 7 | General Unsecured Claims | Each Holder of an Allowed General Unsecured Claim received its Pro Rata share of Plan Trust Interests. | **Approximately 3%[6]** |
| 8 | Subordinated Claims | Holders of Subordinated Claims were not entitled to, and did not receive or retain, any property or interest in property under the Plan on account of such Subordinated Claims. | **0%** |
| 9 | Interests | Equity Interests were deemed extinguished as of the Effective Date and did not receive a distribution under the Plan. | **0%** |

---

[4] There remains one Allowed Miscellaneous Secured Claim that has not been paid as of the date hereof, which Claim the Plan Trustee intends to pay in Cash, in full, prior to the end of calendar year 2021.

[5] There remain two Allowed Priority Non-Tax Claims that have not been paid as of the date hereof, which Claim the Plan Trustee intends to pay in Cash, in full (less applicable withholding), prior to the end of calendar year 2021.

[6] As more fully discussed in the Motion for Final Decree, a first and final distribution (of approximately 3%) to holders of Allowed General Unsecured Claims is intended to be made prior to the end of calendar year 2021.

2